428 So.2d 148 (1982)
Aubrey Lee ROBINSON
v.
STATE.
7 Div. 992.
Court of Criminal Appeals of Alabama.
November 2, 1982.
Rehearing Denied December 28, 1982.
Certiorari Denied March 4, 1983.
*150 Arthur Parker, Birmingham, for appellant.
Charles A. Graddick, Atty. Gen. and J. Anthony McLain and James F. Hampton, Sp. Asst. Attys. Gen., for appellee.
Alabama Supreme Court 82-358.
BARRON, Judge.
On the trial on an indictment charging appellant with trafficking in cannabis, an Etowah County Circuit Court jury found him guilty and assessed a fine of $25,000 and 15 years' imprisonment. Hence this appeal.
On May 16, 1981, Captain Kirby Johnson and Major Charles Tinsley of the Etowah County Sheriff's Department were patrolling on Littleton cut-off, a public road on Sand Mountain, when they came upon a stopped pickup truck and an automobile. The vehicles were facing in opposite directions, with the pickup being on the roadway and the automobile being partially on and partially off the roadway; there was not enough room to drive between the two vehicles. The pickup was headed in the same direction as the officers were traveling, and the automobile, which belonged to appellant, was headed in the opposite direction.
When the stopped vehicles first came into the view of the officers, they noticed that the trunk lid of the automobile was raised, and that two individuals were standing at the rear corner of the automobile. Captain Johnson testified that as the vehicles first came into view, he saw the owner of the pickup truck carrying a box, which he threw on the ground.
As the officers' vehicle approached the parked vehicles, the pickup truck, driven by the wife of the owner, began moving forward. The officers activated the blue light, and the pickup stopped after traveling approximately 25 feet.
Upon stopping at the scene, the officers noticed a cardboard box approximately two feet square and eighteen inches high, partially on the roadway and partially off the roadway, about two feet to the rear and slightly to the right of the parked automobile. The officers opened a feed sack, which the box contained, and found a quantity of a substance which they recognized as being marijuana and which was later identified as being five pounds of marijuana. The officers inquired of the appellant and his companion as to the ownership of the box, and both stated that they did not know. Both the appellant and his companion were then arrested. A search of the individuals at the scene revealed that appellant had seventeen $100 bills in his possession. The State put on evidence that the street value of the marijuana in question was between $1,500 and $2,000. Appellant offered no witnesses or evidence.

I
The indictment, which was returned and filed in Etowah County Circuit Court on June 8, 1981, provided:
"The Grand Jury of said County charges that before the finding of this indictment Aubrey Lee Robinson, whose name to the Grand Jury is otherwise unknown than as stated did knowingly sell, manufacture, deliver or bring into this state, or was knowingly in actual or constructive possession of in excess of one kilo or 2.2 pounds of cannabis, to-wit: 5 pounds of marijuana, in violation of the provisions of Title 20-2-80 of the 1975 Code of Alabama, contrary to law and against the peace and dignity of the State of Alabama."
Appellant demurred to the indictment or, alternatively, moved to quash the indictment on the ground that it did not allege the date of the offense or that it did not allege that the offense occurred after May 28, 1980, the effective date of the trafficking statute. The trial court overruled the demurrer and denied the motion.
The issue involved is whether time is a material ingredient of the offense. If so, it is necessary that the precise time be alleged in the indictment, and if not, time need not be alleged in the indictment. Ala.Code 1975, § 15-8-30.
*151 The statute of limitations for violation of § 20-2-80 is three years. Ala.Code 1975, § 15-3-1. Inasmuch as the indictment was returned on June 8, 1981, the period covered by the indictment related back to June 8, 1978.
The Alabama legislature enacted § 20-2-80, effective on May 28, 1980, wherein by express provision all laws or parts of laws in conflict therewith were expressly repealed. Section 20-2-80 provided that on and after May 28, 1980, possession of more than 2.2 pounds of marijuana, whether for personal use or for sale, and whether by a first offender or by a repeat offender, constitutes a felony. Section 20-2-80 superseded § 20-2-70, which provided that possession of any quantity of certain enumerated controlled substances (one being marijuana) was a felony. An exception was that possession for personal use only by a first offender was a misdemeanor.
The net effect of the enactment of § 20-2-80 was to provide that on and after May 28, 1980 (the effective date of the act), possession of over 2.2 pounds of marijuana, whether for personal use and whether by a first offender or by a repeat offender, constituted a felony. Section 20-2-70 became limited in application to offenders possessing 2.2 pounds or less. Beasley v. State, 408 So.2d 173 (Ala.Cr.App.1981), cert. denied, 408 So.2d 180 (Ala.1982).
Appellant complains that time is a material ingredient of the offense in view of the fact that the statute of limitations for the misdemeanor provision of § 20-2-70 did not expire until May 28, 1981 (one year from the enactment of § 20-2-80), a time after the occurrence of the offense in this case. The thrust of appellant's contention appears to be that the offense, i.e., possession of more than 2.2 pounds, was raised from a misdemeanor (assuming first offender status and "personal use only" proof) to a felony, and that the offense could have constituted a misdemeanor if the event had occurred prior to May 28, 1980, or a felony if it took place after May 28, 1980.
Appellant contends that time is a material ingredient of an offense when either (1) the offense was raised from a misdemeanor to a felony and during the limitations period covered by the indictment the offense was both a misdemeanor and a felony, or (2) the indictment is for a new offense and the limitations period covers both times during which the occurrence would not have constituted an offense and when the events would have constituted an offense. Appellant relies on Howard v. State, 17 Ala.App. 464, 86 So. 172 (1920), and Jinright v. State, 24 Ala.App. 277, 134 So. 456 (1931).
We agree that when an indictment is so vague, uncertain, or ambiguous that the trial court would be unable to pronounce judgment upon a plea or finding of guilt, then time would be a material ingredient to the offense and must be alleged in the indictment. However, we are not persuaded that Howard and Jinright are controlling in this instance.
Section 20-2-80, which became effective on May 28, 1980, did not create a new offense in that possession of any quantity of marijuana (either more or less than 2.2 pounds) prior to May 28, 1980, constituted a felony under § 20-2-70; the only manner in which such possession could have been reduced to a misdemeanor would have been proof by the accused that the marijuana was for his personal use only and that he was a first offender. The record does not bear out any suggestion of either of these conditions.
The indictment further provides that the offense was "in violation of the provisions of Title 20-2-80 of the 1975 Code of Alabama." This sufficiently put the appellant on notice that the offense occurred after the effective date of § 20-2-80 on May 28, 1980, and before the finding of the indictment on June 8, 1981.
We find that time was not a material ingredient of the offense in this case and that, therefore, the trial court's rulings in that regard were correct.

II
Appellant urges that Code § 20-2-80 is unconstitutional on the grounds that it *152 amended § 20-2-70 without the latter section having been re-enacted and published at length as required by Section 45, Article IV, Constitution of Alabama, 1901. This issue was decided to appellant's detriment in Beasley v. State, supra, wherein it was held that the legislative intent was that § 20-2-80 superseded § 20-2-70 when the offense involved more than 2.2 pounds of marijuana, and that the application of § 20-2-70 is limited to offenses involving 2.2 pounds or less. The distinction inherent in the two Code sections is the quantity of marijuana possessed by the offender, and making this distinction is a proper exercise of the State's police power to regulate the administration, sale, possession and use of narcotic drugs. Consequently, we find that the trial court's rulings were proper.

III
Appellant urges that the trial court erred to reversal in not permitting appellant two-for-one jury strikes in this cause. He contends that the jury selection statute in effect on the date of the alleged offense, rather than an Act in effect on the trial date, is controlling. The alleged offense occurred on May 16, 1981, and the trial date was May 11, 1982.
The Alabama legislature enacted Act 82-221, effective on April 15, 1982, which changed the jury striking procedure in criminal cases from the two-for-one system permitted to defendants to an equal number of jury strikes for both the defendant and the State, the one-for-one system.
The jury striking process, being procedural in nature, is governed by the applicable law in effect on the trial date, in this instance, Act 82-221. This is distinguished from matters which are jurisdictional or substantive in nature, which would be governed by the applicable law in effect on the date of the alleged offense, as was the case in Bracewell v. State, 401 So.2d 123 (Ala. 1979), and Hansen v. State, 375 So.2d 564 (Ala.Cr.App.1979), on which appellant relies.
We find no error in the trial court's rulings in this regard.

IV
Section 20-2-80 proscribes either actual or constructive possession of more than 2.2 pounds of marijuana. Appellant contends that the trial court erroneously charged the jury as to the element of constructive possession, and erroneously refused two of appellant's written charges dealing with the element of constructive possession.
The court's oral charge on constructive possession was:
"The word possession means either actual possession or constructive possession or possession by physical dominion or control. The possession prohibited includes any possession by physical dominion of however brief duration."
The written charges of appellant on constructive possession which were given were (numbers 18, 20, 22 and 23, respectively):
"The court charges the jury that knowledge by the accused of the presence of the controlled substance is an essential element and a prerequisite to a guilty verdict for illegal possession of a controlled substance."
"The Court charges the jury that for you to return a guilty verdict based on constructive possession, you must be convinced beyond a reasonable doubt that the defendant had knowledge that the box seized in this case contained a controlled substance."
"The Court charges the jury that for you to return a verdict of guilty based on constructive possession, each juror must be convinced beyond a reasonable doubt that the defendant knew of the presence of the controlled substance."
"The court charges the jury that the mere presence of the defendant in the area where controlled substances are found is not sufficient to establish the requisite knowledge of the presence of the controlled substance."
The refused written charges of appellant were (numbers 17 and 21, respectively):
"The Court charges the jury that for you to return a verdict of guilty, proof of *153 constructive possession alone will not justify a conviction; each of you must also be convinced beyond a reasonable doubt that the defendant knew of the presence of the controlled substance."
"The Court charges the jury that for you to return a guilty verdict based on constructive possession, you must find that this defendant had actual or potential control of the controlled substance, an intention to exercise dominion over the controlled substance and expressed an external manifestation of intent and control of the controlled substance."
The doctrine of constructive possession was adequately and substantially covered in the court's oral charge and appellant's written charges which were given to the jury. Where the matter in refused written charges is substantially and fairly covered in other given charges, the trial court does not commit prejudicial error in refusing such written charges. Lambeth v. State, 380 So.2d 923 (Ala.1979); Walker v. State, 265 Ala. 233, 90 So.2d 221 (1956). Written charges numbers 17 and 21 were properly refused as having been adequately covered in other portions of the court's charges.

V
Appellant contends that the trial court wrongfully refused to suppress the evidence seized at the scene.
The thrust of appellant's contention is that the warrantless search was illegal in that none of the exceptions to the Fourth Amendment warrant requirements are present in the case at bar. That issue escapes consideration because, based on the facts and circumstances, we are convinced that appellant lacked standing to contest the search and seizure, because he did not have any legitimate expectation of privacy from governmental invasion in the area searched. United States v. Salvucci, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980); Rawlings v. Kentucky, 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980); Rakas v. Illinois, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978).
In Collier v. State, 413 So.2d 396 (Ala.Cr. App.1981), aff'd, 413 So.2d 403 (Ala.1982), a situation similar to the instant case arose. In finding that Collier had no standing to contest the validity of the search and seizure therein, this court stated:
"Persons charged with crimes of possession may only claim the benefits of the exclusionary rule if their own Fourth Amendment rights have in fact been violated. Salvucci, supra; Rakas, supra. The burden rests on the defendant to prove not only that a search was illegal, but also that he had a legitimate expectation of privacy in the area searched. Rawlings, supra. `(A) prosecutor may, with legal consistency and legitimacy, assert that a defendant charged with possession of a seized item did not have a privacy interest violated in the course of the search and seizure.' Salvucci, 100 S.Ct. at 2551.
"The automatic standing rule of Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), was specifically overruled in Salvucci, 100 S.Ct. at 2554. See also Rawlings, supra. The test of standing is found in Salvucci.

"`The person in legal possession of a good seized during an illegal search has not necessarily been subject to a Fourth Amendment deprivation. As we hold today in Rawlings v. Kentucky, post [100 S.Ct.], at 2556, legal possession of a seized good is not a proxy for determining whether the owner had a Fourth Amendment interest for it does not invariably represent the protected Fourth Amendment interest'.
"`While property ownership is clearly a factor to be considered in determining whether an individual's Fourth Amendment rights have been violated, see Rakas, supra, 439 U.S., at 144, n. 12 [99 S.Ct., at 431], property rights are neither the beginning nor the end of this Court's inquiry. In Rakas, this Court held that an illegal search only violates the rights of those who have a "legitimate expectation of privacy in the invaded place." Rakas, id, at 140 [99 S.Ct. at 430]. See *154 also Mancusi v. DeForte, supra [392 U.S. 364, 88 S.Ct. 2120, 20 L.Ed.2d 1154].'
"`As in Rakas, we find that the Jones standard (legitimately on the premises) "creates too broad a gauge for measurement of Fourth Amendment rights" and that we must instead gauge in a "conscientious effort to apply the Fourth Amendment" by asking not merely whether the defendant had a possessory interest in the items seized, but whether he had an expectation of privacy in the area searched.'" Salvucci, 100 S.Ct. at 2552-3.
"The Salvucci test for standing is whether the defendant had a legitimate expectation of privacy from governmental invasion in the area searched...."
Furthermore, appellant attempted to put as much distance between himself and the criminal activity in the short period of time available to him. He disclaimed any knowledge of the ownership of the box. At no time did he make any claim of ownership. Taken as a whole, the evidence falls far short of establishing a legitimate expectation of privacy from governmental invasion of the box or its contents. See also O'Leary v. State, 417 So.2d 232 (Ala.1982).
The trial court's judgment of conviction is due to be affirmed.
AFFIRMED.
HARRIS, P.J., and DeCARLO and BOWEN, JJ., concur.
TYSON, J., concurs specially.
TYSON, Judge, concurring specially.
I concur in parts I through IV of Robinson v. State, [Ms. 7 Div. 992, November 2, 1982], but for the reasons herein stated, concur specially in part V.
In the companion case of Hobert Owen Ellis, 428 So.2d 142 (Ala.Cr.App.1982), several distinguishing features in the testimony require comment in the instant case.
To begin with, the two arresting officers, Johnson and Tinsley, stated that they knew Ellis by sight and by reputation and observed him actually "throw or discard" the box a short distance behind Robinson's automobile which was parked. Also, the two officers observed Ellis' vehicle, a pickup truck, partially obstructing the right-of-way of the highway and saw Ellis, after discarding the box, running toward his truck and observed Ellis' wife attempt to drive away from the scene.
All of these factors are dealt with in the companion case of Ellis, and which in my opinion, constitute factors establishing probable cause in the minds of the officers for stopping Ellis' vehicle, opening the box and subsequently the sacks, in the rear of Ellis' pickup truck.
Since there was a dispute as to the alleged possession and ownership of the box, as pointed out in Ellis, such factors establish probable cause plus exigent circumstances, to stop the vehicle and make the search as outlined in Ellis, 428 So.2d 142 (Ala.Cr.App.1982), released this date.
Because of these differences, I believe it appropriate that I concur specially as herein noted.